


December 7, 2022

**Via ECF**
The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   In re: New York City Policing During Summer 2020 Demonstrations, No. 20-CV-8924
        *This Filing is Related to All Cases*

Dear Judge Gorenstein:

      We represent the *Payne* plaintiffs and write on behalf of all Plaintiffs respectfully to request a discovery conference or permission to file a motion to compel the production of certain Office of the Mayor and NYPD emails wrongfully withheld by Defendants as privileged under the deliberative process and/or law enforcement privileges. Defendants' privilege logs suggest that many of these documents contain highly relevant factual and operational communications directly related to the Plaintiffs' claims, including the enforcement of the June 2020 curfew, the policing of the protests, and information directly related to Defendants' affirmative defenses. Accordingly, Defendants must produce these documents as they have not established that they are privileged and, to the extent they are, these qualified privileges are overcome by Plaintiffs' significant need.

      The parties have met and conferred in good faith at length about this dispute. Most recently, on September 15, Daniel Lambright, Molly Biklen, Swati Prakash, and Remy Green on behalf of Plaintiffs and Nadine Ibrahim on behalf of Defendants met and conferred in good faith for approximately one hour. On October 7, Defendants downgraded and produced certain documents and on October 12 provided supplemental privilege logs updating the privilege descriptions for a subset of documents. On November 17, Plaintiffs confirmed an impasse over the remaining documents at issue here. On December 6, Defendants provided an additional privilege log.

## I.   Deliberative Process Privilege Assertions

      The deliberative process privilege (DPP) is a qualified privilege that applies when a document is both (1) "predecisional, *i.e.,* prepared in order to assist an agency decisionmaker in arriving at his decision, and (2) deliberative, *i.e.,* actually ... related to the process by which policies are formulated." *Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 356 (2d Cir. 2005) (cleaned up). The DPP "does not extend to 'purely factual, investigative matters.'" *Mitchell v. Fishbein*, 227 F.R.D. 239, 250 (S.D.N.Y. 2005) (citing *EPA v. Mink*, 410 U.S. 73, 89 (1973)).

As an initial matter, Defendants have misapplied the DPP to withhold documents that do not appear to be deliberative. For example, Defendants have withheld documents from the Office of the Mayor (OTM), DMNL00303_000016070, and DMNL00303_000016071, under the broad category "Agenda/Schedule – Discussions/Planning/ Drafting." While agendas and minutes of meetings sometimes include deliberative information, the descriptions of these documents in Defendants' privilege log, attached as Exhibit A, do not indicate that these agendas and meeting notes were recommendations or deliberative in a way that would justify wholly withholding the documents. [1] *See MacNamara v. City of New York*, 249 F.R.D.70, 81 (S.D.N.Y. 2008) (meeting agendas that did "not reflect 'recommendations' or 'deliberations comprising part of a process by which governmental decisions and policies are formulated,'" not deliberative) (internal citations omitted); *see also Fox News Network, LLC v. U.S. Dep't of The Treasury*, 739 F. Supp. 2d 515, 551 (S.D.N.Y. 2010) (conference call agendas "consist[ing] of a list of items to be discussed" not deliberative).

Similarly, Defendants have withheld OTM and NYPD emails that appear to concern factual or operational matters, and nothing in the privilege log suggests that these documents are deliberative or include the application of policy-oriented judgment related to how to communicate policy decisions to the public. *See* Ex. A, DMNL00303_ 000041903, DMNL00303_ 000043165, DMNL00303_ 000043159, DMNL00303_ 000043171, and DMNL00303_ 000043041 (subject: "tonight"); DMNL00303_ 000054104; DMNL00303_ 000252149; DMNL00303_ 000252160; DMNL00303_ 000042258 (Re: Protests Report: Thurs, 6/4 at 11:05pm- videos); DMNL00303_ 000155474 (Re: Protest body cam video); DMNL00303_ 000055141 (Fwd: Jon Campbell on Twitter . . .); DMNL00303_ 000055124; DMNL00251_ 000137613; DMNL00251_ 000134920; DMNL00251_ 000135614; DMNL00251_ 000234771 ("Mobile Field Force Instructions"); DMNL00251_ 000257987. The descriptions provided for these documents fail to specify a policy decision warranting invocation of the privilege. *See Auto. Club of N.Y., Inc. v. Port Auth. of N.Y.*, 297 F.R.D. 55, 60 (S.D.N.Y 2013). It is well established that "routine operating decisions" or descriptions of factual information, such as protest reports, are not the type of policy formulation to which the DPP applies. *Mitchell*, 227 F.R.D. at 251.[2]

Defendants have also withheld several documents relating to the implementation and enforcement of the June 2020 curfew identified under the generalized categories "Curfew – Discussions and Interpretation of Executive Order" and "Executive Order – Discussions/Drafting." *See* Ex. A. Even assuming that Defendants could make out a facial claim of privilege as to these documents, the DPP is qualified and must yield to the compelling need for the information contained therein. For the DPP, when a "party's cause of action is directed at the government's intent in rendering its policy decision and closely tied to the underlying litigation

---

[1] Document DMNL00303_ 000016775 ("General Staff Meeting 06_03_2020.docx") is described in the log as "Communication between OTM and NYPD containing pre-decisional discussions, deliberations, thoughts and ideas regarding officer discipline and protest investigations"—a description that is not consistent with the name of the file. Defendants have not explained how such communications would be contained in a staff meeting document or why they could not be redacted.

[2] Even if the DPP could apply, these issues are directly at issue in this case and Plaintiffs' need for the documents outweighs the privilege's purpose in shielding government discussions from disclosure. *See, e.g.*, *Acorn v. Cnty. of Nassau*, No. CV05-2301 JFB/WDW, 2008 WL 708551, at *4 (E.D.N.Y. Mar. 14, 2008).

then the deliberative process privilege 'evaporates.'" *Child. First Found., Inc. v. Martinez*, No. CIV. 1:04-CV-0927, 2007 WL 4344915, at *7 (N.D.N.Y. Dec. 10, 2007) (quoting *In re Subpoena Duces Tecum Served on the Office of the Comptroller*, 145 F.3d 1422, 1424 (D.C. Cir. 1998)). The DPP "may be overridden in circumstances where reason and experience suggest that the claim of privilege should not be honored." *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 99 (S.D.N.Y. 2003); *In re Franklin Nat'l Bank Sec. Litig.* (justification for the privilege is "attenuated" when "the public's interest in effective government would be furthered by disclosure"). In assessing whether the privilege is overcome, important factors for the Court to consider include:

> (i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable.

*Noel v. City of New York,* 357 F. Supp. 3d 298, 303 (S.D.N.Y. 2019).

These factors weigh strongly in favor of disclosure here. The enforcement of the curfew and how the NYPD and City officials were interpreting which members of the public were exempt from complying with the curfew is an essential element of this lawsuit given that hundreds of people were arrested under the pretense that they were violating the curfew. *See, e.g.*, ECF No. 54 ¶¶ 58–62; ECF No. 94 ¶¶ 47, 55–60, ECF No. 96 81–94. To the extent that Defendants are withholding emails pertaining to curfew enforcement under the DPP, this privilege is overcome, and the documents must be produced.[3]

Similarly, Plaintiffs' need overcomes the DPP for an OTM document categorized as "Use of Force Investigations – Discussions" that Defendants described as "containing deliberations and drafting of agenda for the Mayor," s*ee* Ex. A, DMNL00303_ 000154520, and two documents "containing pre-decisional drafts, revisions, discussions, deliberations, thoughts and ideas" about the RNC executive summary and mass arrest plans from 2004. *See* Ex. A, DMNL00251_ 000287365; DMNL00251_ 000296479.

---

[3] Documents DMNL00303_ 000155682, DMNL00303_ 000198522, DMNL00303_ 000213135, and DMNL00251_ 000147303 invoke both the deliberative process and attorney client confidentiality privileges. For the reasons discussed, the deliberative process privilege is overcome as to these documents. As to the attorney client confidentiality assertions, the privilege log fails to make out the factual elements to support these assertions. There is no indication that anyone involved in these communications was providing legal guidance to and representing the Office of the Mayor; rather they were serving in policy roles within the City. *See In re County of Erie*, 473 F.3d 413, 421 (2d Cir. 2007) ("When an attorney is consulted in a capacity other than as a lawyer, as (for example) a policy advisor . . . that consultation is not privileged."). Additionally, DMNL00303_ 000198522 is an email with the subject line "Pc meeting notes" and beyond the bare assertion that legal advice is contained in this email, there is no indication that any attorneys sent the email or conveyed legal guidance in the email.

## II. Law Enforcement Privilege Assertions

The law enforcement privilege (LEP) is designed to protect information that either pertains to law enforcement techniques and procedures, or that would, if disclosed, undermine the confidentiality of sources, endanger witness and law enforcement personnel, undermine the privacy of individuals involved in an investigation, or seriously impair the ability of a law enforcement agency to conduct future investigations. *In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010); *see also S.E.C. v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 159 (S.D.N.Y. 2014). The party asserting the law enforcement privilege bears the burden of "show[ing] that the documents contain information that the law enforcement privilege is intended to protect." *In re The City of New York*, 607 F.3d at 944. Parties cannot meet this threshold showing with "mere conclusory or *ipse dixit* assertions." *Macnamara v. City of N.Y.*, 249 F.R.D. 70, 79 (S.D.N.Y. 2008) (quoting *In re Grand Jury Subpoena Dated Jan. 4, 1984*, 750 F.2d 223, 224–25 (2d Cir. 1984)). Defendants have failed to establish the privilege with respect to the documents listed in Exhibit B.

### A. *Daily Intelligence and Terrorism Briefings*

Defendants have withheld at least 18 documents with the title "DailyIntelBriefing (FOUO_LES)." The privilege log alleges that these documents are created by an outside agency – the MTA—and "contain compilations of highly sensitive intelligence discussing, describing, analyzing threats, news stories and historical events … ." *See* Ex. B. This description fails to explain how the documents reflect "identifications of concerns and/or groups on NYPD's security watch." The description also fails to claim that the concerns or groups identified remain relevant to "future anti-terrorism investigations and operations." Nor do they explain how analysis of "news stories" and "historical events" disclose confidential techniques, sources, or procedures. In any event, at most the description of these documents may justify the redaction of specific identities but is not a basis for wholly withholding the documents.

Similarly, Defendants have withheld at least 11 documents entitled "NYPD Daily Terrorism Brief." *See* Ex. B. Defendants' assertion of privilege over these documents are conclusory and fail to specify why the documents at issue would expose ongoing law enforcement techniques and procedures or hinder future law enforcement investigations. As with the Daily Intel Briefings, at most this description may justify redactions, but not full withholding.

### B. *DHS Reports*

Defendants have produced and/or included in the privilege log a total of six emails from the Department of Homeland Security's Office of Intelligence and Analysis. *See* Ex. B. Defendants withheld the attachments to these six emails as protected by the LEP, although their titles show that they are labeled "unclassified." Yet Defendants have produced several other unclassified DHS reports sent as attachments. *See, e.g.*, Ex. B, DEF_E_PD_000117963; DEF_E_PD_000117968. Based on those produced reports, the withheld reports do not contain information disclosing either investigative methods or sources (other than "open"), and therefore the LEP does not appear to apply to these. Defendants' position on these documents is either that the documents come from the FBI or DHS and may not be disclosed without authorization from that agency, or that the documents are password protected and that they were unable to retrieve the password for the documents. We asked Defendants to describe the steps they have taken to obtain authorization for

documents from DHS and the FBI, or to obtain the document's password, where applicable. On December 1, Defendants informed us that DHS is reviewing the documents and that the FBI is "in the process of referring us to their counsel's office."

### C. The Documents Withheld under the LEP Containing Information Necessary for This Case Must Be Turned over

Even if the aforementioned documents are validly being withheld on LEP grounds, the privilege is qualified, and Plaintiffs have a compelling need for the withheld material given their centrality to the Plaintiffs and Defendants' claims and defenses. *Floyd v. City of New York*, 739 F. Supp. 2d 376, 381 (S.D.N.Y. 2010); *see In re The City of New York*, 607 F.3d at 940 ("[B]ecause the law enforcement privilege is a *qualified* privilege, not an absolute privilege, there are circumstances in which information subject to the privilege must nevertheless be disclosed."). In addition to the aforementioned documents, Defendants have broadly asserted the LEP to withhold (1) intelligence documents pertaining to alleged threats to officer safety and the public, largely belonging to the privilege log categories "Officer Safety and Intel Gathering – Discussions/Analysis"; (2) intel about the protests at issue in this litigation; and (3) emails or files with redacted file names and subject lines described only as pertaining to sensitive law enforcement operation or intelligence. *See* Ex. B. Each of these categories of documents are at the heart of Plaintiffs' claims and/or Defendants' defenses—as are all of the documents identified in Parts 1 through 3 above—and therefore even assuming the LEP is facially applicable to any of these documents, that privilege is overcome, and they should be produced.

Should the Court uphold Defendants' claim of privilege with respect to these documents, Plaintiffs respectfully request that Defendants be precluded from relying on any specific incident described in any withheld document as part of their defense. *Cf. SEC v. Honig,* No. 18 CIV. 8175 (ER), 2021 WL 5630804, at *10 (S.D.N.Y. Nov. 30, 2021) (striking defenses reliant upon attorney-client communications that were withheld as privileged); *Trouble v. Wet Seal,* 179 F. Supp. 2d 291, 304 (S.D.N.Y. 2001) (upholding motion to preclude "advice of counsel" defense when attorney-client privilege was used to withhold discovery, finding the defense had been waived upon assertion of the privilege).

#### i. Intelligence Related to Officer Safety

Defendants have raised an affirmative defense in these cases that "To the extent any force was used, such force was reasonable, justified, and necessary to accomplish official duties and to protect the officers' own physical safety and the safety of others." ECF No. 202 ¶ 242. However, Defendants withhold 20 documents on the grounds that they pertain to "Officer Safety and Intel Gathering – Discussions/Analysis." Defendants may not rely on the defense that force used against protestors was justified while withholding the basis for that determination.[4] *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) ("[A] party cannot partially disclose privileged communications or

---

[4] For this same reason, Defendants' withholding of six documents identified as "Person reports" from the Intelligence Division Social Media Analysis and Research team, which appears to be based on open-source information and, in some cases, include video is overcome given Defendants' defenses. See Ex. B.

affirmatively rely on privileged communications to support its claim or defense and then shield the underlying communications from scrutiny by the opposing party.").

### ii. Intelligence Directly Related to Protest Response

Defendants also withhold documents discussing intelligence about the protests that are the subject of this litigation. *See, e.g.*, Ex. B, DMNL00251_000168789 (email dated June 4, 2020, 5:33 pm, from Thomas Galati to Terence Monahan, with subject line "Fwd: Intel Protest Detail 06-04-2020").[5] Defendants have relied on the claim that they had reliable intelligence indicating threats to public safety in connection with the racial justice protests, including the Mott Haven protest of June 4, 2020. *See, e.g.*, June 5 Press Conference by Mayor de Blasio and Commissioner Dermot Shea, available at https://www.nyc.gov/office-of-the-mayor/news/410-20/transcript-mayor-de-blasio-holds-media-availability (Commissioner Shea: "In this particular incident, we had information regarding the intent to destroy property, to injure cops, to cause mayhem."; Mayor De Blasio: "[I]ndividuals appeared with tools of violence, with the intent to do violence in that community. And that's unacceptable. And that's exactly what we need the NYPD to intervene in and stop, and they did, and they did it effectively."); *See also* Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint at 6 ("[P]olice seized hammers, lighter fluid, gas masks, and fireworks from protesters headed to the Mott Haven protests on June 4, 2020."). This category includes a document sent from the NYPD to the Mayor's Office on June 22, 2020, that appears to be an overview of the "structure and operation of the intelligence bureau." Ex. B, DMNL00303_000151616. In light of these assertions, Defendants have placed the substance of the intel upon which they relied to justify use of force against protestors directly at issue in this litigation, and Plaintiffs are entitled to examine that intel to evaluate its relevance and credibility.

### iii. Redacted Subject Lines and File Names

There are 67 entries in Defendants' privilege log for emails to or from Chief of Intelligence Thomas Galati, and often to or from Defendant Terence Monahan, with the subject line wholly redacted, with the notation "[Redacted - Identifying info re: confidential source in sensitive law enforcement operation]." In addition, there are 43 documents with wholly redacted file names ("[Redacted - Identifying info re: confidential source in sensitive law enforcement operation]") -- all but one of these include Defendant Terence Monahan as a custodian, and is from custodian Stephen Hughes, who is both a fact and 30(b)(6) witness. These documents are all logged in the category of "Undercover Officers/CI Leads – Discussions/Summaries," and/or "Officer Safety and Intel Gathering – Discussions/Analysis."

As an initial matter, the redaction of subject lines or file names combined with a categorical privilege log description renders Defendants' claim of privilege conclusory and impossible to evaluate. This is particularly so for the documents described only as "Undercover Officers/CI Leads – Discussions/Summaries," with not even a subject matter provided. *See United States v.*

---

[5] This category includes an intel document disclosed first time by Defendants on June 24, 2022, in a supplemental privilege log pertaining to the Conforti After-Action Report, titled "NYPD Intelligence Bureau," described as a "Presentation dated July 2020, prepared by the NYPD Intelligence Bureau regarding 'individuals who advocate and commit unlawful conduct, including violence and property damage,' at George Floyd related protests." *See* Ex. B.

*Wey*, 252 F. Supp. 3d 237, 252–253 (S.D.N.Y. 2017) (rejecting privilege assertions that included no "description of the documents themselves . . . without any specific explanation of the need for their protection"). Nonetheless, based on the bare information provided, it appears that these documents may be produced with redactions, which would protect the identities of confidential sources, while still permitting Plaintiffs to access the non-sensitive factual content.

Even assuming that the LEP validly applies to the entire content of these documents, given the individuals involved, the dates, their categorical descriptions and the fact that Defendants have determined that these documents are responsive to Plaintiffs' document requests, as described above they almost certainly contain information justifying the overcoming of the LEP in this case, and should be produced.

\* \* \*

Accordingly, Plaintiffs respectfully request that this Court review in camera and compel the disclosure of the documents listed on Exs. A and B. Alternatively, Plaintiffs request permission to file a motion to compel these documents.

Sincerely,

By: */Daniel Lambright*  
Daniel R. Lambright  
Molly K. Biklen  
Jessica Perry  
Robert H. Hodgson  
Veronica Salama  
Lisa Laplace  
Christopher T. Dunn  
New York Civil Liberties Union Foundation  
125 Broad Street, 19th Floor  
New York, N.Y. 10004  
(212) 607-3300  
dlambright@nyclu.org  

By: *Corey Stoughton*  
Corey Stoughton  
Jennvine Wong  
Rigodis Appling  
The Legal Aid Society  
199 Water Street  
New York, N.Y. 10038  
(212) 577-3367  
cstoughton@legal-aid.org  

*Attorneys for Plaintiffs in 20 Civ. 8924*