**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

SAMIRA SIERRA, AMALI SIERRA, RICARDO NIGAGLIONI, ALEX GUTIERREZ, and CHARLES HENRY WOOD, individually and on behalf of all others similarly situated,

                          Plaintiffs,

v.

CITY OF NEW YORK, a municipal entity; and Mayor BILL DE BLASIO, Chief of Department TERENCE A. MONAHAN, Assistant Chief KENNETH C. LEHR, Inspector ROBERT GALLITELLI, Bureau Chief HARRY WEDIN, Deputy Chief JOHN D'ADAMO, Deputy Chief GERARD DOWLING, Captain JULIO DELGADO, Sergeant KENNETH RICE, Sergeant THOMAS GARGUILO, Police Officer JOHN MIGLIACCIO, and Police Officer THOMAS MOSHER, in their individual capacities,

                          Defendants.

20-cv-10291 (CM)(GWG)
20-cv-10541 (CM)(GWG)

**DECLARATION OF JOSHUA S. MOSKOVITZ IN SUPPORT OF UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL**

---

JOSHUA S. MOSKOVITZ, an attorney duly admitted to practice before this Court, declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

1. I am a Partner at Hamilton Clarke, LLP. The Court appointed my firm, Kaufman Lieb Lebowitz & Frick LLP; Rickner PLLC; and Michael L. Spiegel, Esq., as Class Counsel in this case on March 3, 2023 (Dkt. 172).

2. I am fully familiar with the facts of this case, and I submit this declaration in support of Plaintiffs' unopposed motion for (i) final approval of the settlement; (ii) final certification of the class for settlement purposes under Rule 23(b)(3); (iii) determination that the notice to the class was materially consistent with the Court's Preliminary Approval Order; (iv) approval of the service awards to the Class Representatives; and (iv) approval of the settlement of Class Counsel's attorneys' fees and costs through March 3, 2023 (the date the Court so-ordered the parties'

Stipulation of Settlement and Order, Dkt. 890, and granted preliminary approval to the proposed class settlement, Dkt. 892).

3. The most important point to note at the outset is that 251 claims were filed out of a total of 394 identified class members. No class member filed a request to opt out, no objection was received by Class Counsel or the Claims Administrator, and from what we understand, no objection was filed with the Court concerning any aspect of the settlement.

4. Out of the 394 identified class members, 137 were subsequently identified as people who had settled claims separate from this case, and one was from a person determined not to be a class member, leaving 256 class members eligible to participate in this settlement. Out of the 251 claims that were filed, 28 were found to be from class members who had already settled their claims, and one was from the person determined not to be a class member, leaving 222 claims (three of which remain disputed, as discussed below). Thus, of the 256 eligible class members who did not already settle their claims, 222 claims were submitted—an extraordinary response no matter how it is calculated and which in Class Counsel's view exceeds an 86% response.

**I.  Notice Was Given to the Class as Ordered by the Court**

5. In addition to retaining Rust Consulting, Inc. to serve as the Claims Administrator as directed by the Court, *see* Dkt. 892, Class Counsel performed the following non-exhaustive list of tasks to notify the class of the proposed settlement:

    a. Class Counsel gave interviews to the press to ensure that word of the settlement would spread through the community, leading to coverage in [*The New York Times*](#), the [*Washington Post*](#), the [*New York Post*](#), the [*New York Daily News*](#), and [*Gothamist*](#), among other publications, as well as local television news ([ABC](#), [CBS](#), [NBC](#), and [Fox](#));

b. Class Counsel posted announcements about the settlement on social media platforms and worked with organizations, like the Bronx Defenders, to post similar messages on their social media accounts;

c. Class Counsel searched public records, social media sites, and online sources to locate and contact missing class members; and

d. Class Counsel hired an investigator to physically deliver notice to addresses associated with 18 class members who had not filed claims.

6. These efforts resulted in the submission of several additional claims.

7. Between March and August 2023, Class Counsel logged communications with more than 130 people who submitted inquiries through the settlement website set up by Rust Consulting (inquiries were automatically routed to email accounts established for Class Counsel and the New York City Law Department).

8. Most of these inquiries were from people who had been arrested and were already identified as class members; they simply needed their Claim ID numbers to file a claim or wanted more information about the settlement.

9. The remaining dozens of inquiries were from people who had not been arrested at the protest but had been detained or subjected to police force, and thus had not yet been assigned a Claim ID number but were members of the Class.

10. In order to assess the legitimacy of these potential class members' claims, Class Counsel utilized the following procedure:

a. Class Counsel responded directly to each potential class member.

b. Class Counsel first requested the potential class member send any available documentary evidence that supported their claim (*e.g.*, photographs or videos taken on June 4, 2020) and a copy of their photo ID.

c. Class Counsel then conducted a video conference with each putative class member to confirm their identity and their class eligibility.

11. Through that process, Class Counsel identified 43 people who had not been arrested but nevertheless met the definition of the Class because they had been detained or subjected to police force.

12. In assessing each putative class member, Class Counsel carefully considered the requested description of their experience on June 4, 2020, any documentary evidence they submitted, and, in some cases, the corroborating statements of other known class members.

13. When a new class member was identified, Class Counsel asked Rust to assign a Claim ID number, which Class Counsel then provided to the class member so they could submit a claim.

14. Through this process, Class Counsel identified three people whose descriptions of the relevant events were inconsistent with known facts and offered no other evidence to support their assertion that they were class members; accordingly, those three people were not given Claim ID numbers.

15. The remaining 43 other claimants received Claim IDs and filed claims. One of those claims was later determined to be from a person who did not meet the class definition.

16. Pursuant to the terms of the Settlement Stipulation, the City questioned the eligibility of certain putative class members identified through this process.

17. For those class members, Class Counsel obtained additional information—in some cases, going back to the claimants to request further evidence.

18. The parties convened four lengthy phone conferences to discuss the disputed claims, and eventually reached agreement on all but three claims.

19. For the remaining disputed claims, the parties agree that the Court should refer these disputed claims to the Magistrate Judge for a determination of their status as class members.

20. Seven claims were filed after the deadline (the "Bar Date") set by the Stipulation of Settlement for class members to file claims. *See* Dkt. 881-1 ¶ 5. After discussion with counsel for the City concerning the reasons for the late submissions, the parties agreed to extend the Bar Date to September 30, 2023 to include these seven late-filed claims. Attached here as Exhibit 1 is the Stipulation to Extend Time to File Class Claims, dated October 17, 2023.

## II. The Service Awards Are Fair and Reasonable

21. The proposed service awards are fair and reasonable and no objection was made to them.

22. Each of the named plaintiffs spent more than three years fighting to obtain fair compensation for the class, and their efforts led to the highest-ever, per-person awards in a mass arrest class action case.

23. Each Class Representative filed a Notice of Claim and sat for a 50-h examination by a lawyer representing the City.

24. Each worked with counsel to provide responses to the City's detailed discovery requests—which included providing releases for sealed records from their arrests and, for some of the named plaintiffs, providing releases for highly confidential medical records.

25. Each was deposed for several hours during the course of the litigation.

26. Each Class Representative kept in contact with Class Counsel about the progress of the litigation and asked to be informed about important developments and evidence uncovered in discovery.

27. Each assisted Class Counsel in negotiating the settlement here.

28. And several of the Class Representative assisted Class Counsel to broadcast the settlement so the greatest number of class members would learn about it and participate.

### III. The Agreed-Upon Payment of $2.25 million to Class Counsel Is Reasonable for Attorneys' Fees and Costs Incurred Through March 3, 2023

29. The parties have agreed that the City will pay Class Counsel $2.25 million for the reasonable attorneys' fees and costs incurred through March 3, 2023 (the date of the Preliminary Approval Order). The parties also agreed to negotiate Class Counsel's fees and costs incurred after March 3, 2023, at the conclusion of the case.

30. The agreed-upon fees and costs (through March 3, 2023) were negotiated arms' length and only after the parties negotiated and reached agreement on the settlement stipulation, submitted it for and received preliminary approval from the Court, and notified the class of the proposed settlement.

31. To negotiate this payment, Class Counsel provided the City with detailed contemporaneous time records that spanned hundreds of pages and encompassed thousands of individual time entries, totaling 4,360.1 hours of attorney time. The parties negotiated over several months before reaching agreement on the final amount.

32. The agreed-upon fees are approximately 12% less than the $2.55 million upper limit that Class Counsel disclosed in the Class Notice. In the Class Notice, Class Counsel disclosed that they would seek up to $2.55 million in fees and costs through the date of the Preliminary Approval Order. No objection was filed concerning this amount of potential fees and costs.

33. The thousands of hours spent by Class Counsel litigating the claims in this case were reasonable and necessary to the litigation. The constitutional claims in this case were complex and difficult to prove. They included constitutional claims under 42 U.S.C. § 1983, all alleging *Monell* liability, as applied to a massive police operation. Litigating the violations of various constitutional rights resulting from that police operation—how it was planned, by whom, the intent behind it, and exactly how it was carried out—was a significant challenge.

34. Class Counsel coordinated with their five clients and defended their depositions; drafted detailed complaints, opposed a motion to dismiss (which was defeated on all claims in this matter); prepared for and questioned witnesses in 11 depositions; litigated dozens of discovery disputes that required Court intervention, including to establish protocols for depositions; reviewing hundreds of hours of video and audio footage from the Mott Haven protest; successfully moving to amend and consolidate the complaint; and preparing for and engaging in intensive, successful settlement negotiations with the City.

35. At the time this fee was negotiated with the City (months after the settlement was negotiated), Class Counsel's usual hourly rates in civil rights cases were: $800 per hour for Michael L. Spiegel; $575 per hour for Rob Rickner; $550 per hour for Joshua S. Moskovitz and his partners; $525 per hour for Alison Frick and Douglas Lieb; $325 per hour for associates at Mr. Rickner's firm and Ms. Frick and Mr. Lieb's firm; and $125 per hour for a paid legal intern in Mr. Rickner's firm. These rates are all reasonable and well within the rate of hourly rates approved by courts in this district for attorneys of similar skill and experience.

36. Counsel also incurred $30,357.83 in reasonable litigation costs through March 3, 2023.

37. Applying their reasonable hourly rates to their reasonable and necessary hours, Class Counsel's attorneys' fees and costs through March 3, 2023 totaled well over $2.55 million, the amount that Class Counsel disclosed in the Class Notice as the upper limit of fees and costs that Class Counsel would seek through the date of the Preliminary Approval Order (March 3, 2023). Class Counsel ultimately agreed to the negotiated amount of $2.25 million in order to submit a final approval motion to the Court with as few disputes as possible.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 17, 2023

_____
JOSHUA S. MOSKOVITZ