UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SAMIRA SIERRA et al.,                                     :
                                                          :
                    Plaintiffs,            :            MEMORANDUM ORDER
                                                          :            20 Civ. 10291 (CM) (GWG)
        -v.-                                              :
                                                          :
CITY OF NEW YORK et al.,                                  :
                                                          :
                    Defendants.
-------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

I. BACKGROUND

      On October 25, 2023, the district court granted plaintiffs' motion for approval of a class

action settlement.  See Order Granting Plaintiffs' Motion for Final Approval of Class Action

Settlement, filed Oct. 25, 2023 (Docket # 189) ("Settlement").  The Settlement provided

compensation to class members and defined the class as:

> All persons who were detained, arrested, and/or subject to force by police officers
> on June 4, 2020, on East 136th Street between Brook Avenue and Brown Place in
> the Bronx during the "George Floyd protest" in Mott Haven, and all persons who
> also were given a summons or Desk Appearance Ticket following their arrest at
> that location. . . .

Id. ¶ 2.  The Settlement refers any dispute related to the inclusion of three putative class

members to the undersigned for a "final" determination.  Id. ¶ 21.  Disputes as to two putative

class members were subsequently settled by the parties.  See Letter, filed Jan. 17, 2024 (Docket #

201), at 1 n.1.  The remaining dispute, as to a proposed class member named Quase Beasley, is

now before the Court.[1]

---

[1] See Letter, filed Jan. 29, 2024 (Docket # 208) ("Pl. Letter"); Declaration of Quase
Beasley, annexed as Ex. 1 to Pl. Letter (Docket # 208-1) ("Beasley Decl."); Letter, filed Feb. 12,
2024 (Docket #211) ("Def. Letter"); Letter, filed Feb. 13, 2024 (Docket # 212) ("Pl. Reply").

Plaintiffs concede that Ms. Beasley was not arrested or "'detained' as contemplated by the settlement agreement." Pl. Reply at 2. Thus, the dispute is whether Ms. Beasley was "subject to force by police officers." Plaintiffs contend that she was subject to force because an officer "shove[d] a civilian . . . with such force that he [fell] back into Ms. Beasley, stomping on her foot." Pl. Letter at 1.

In support of their position, plaintiffs have provided an affidavit from Ms. Beasley and a 20-minute video recorded by Ms. Beasley, which includes video footage of the incident.

The video records events taking place on June 4, 2020, near East 136th Street between Brook Avenue and Brown Place. Shortly after the start of the video, officers with bicycles can be seen forming a line to block the path of protesters marching down the street in a maneuver the City calls "encirclement," Def. Letter at 2 n.1, and the plaintiffs call "kettling," Pl. Letter at 1; see Video at 2:23-3:30. Ms. Beasley is standing near a crosswalk at an intersection on the other side of the police line. See Video at 3:00-3:30. Once the police appear to have finished setting up the line blocking the path of the group of protestors, several people on Ms. Beasley's side of the line can be heard trying to move the protestors out of the encirclement. See Video at 3:25-3:50. Multiple officers begin instructing people in the intersection to move towards the sidewalk and also begin pushing people in that direction. See Video at 3:50-3:55. At this point, a man wearing a bandana walks in front of Ms. Beasley's camera. See Video at 3:54. A few seconds later, her camera shows the same man on the sidewalk near the police line videoing the large group of protesters. At this point, an officer who moments earlier was pushing people out of the intersection comes from behind the man and pushes with force against the man's upper arm, apparently to stop him from breaching the police line. See Video at 3:56. A moment later, the man appears to be backing up when the officer extends his arm towards the man. See Video at

3:57-3:58.  The video does not allow for a clear view of whether there was contact between the officer and the man's arm at this point.  However, the Court finds that it is more likely than not that the officer pushed the man's arm a second time.  See id.  The second push physically impelled the man to move to his right and caused the man, apparently without seeing Ms. Beasley, to make contact with her.  See id.

The video does not reflect that Ms. Beasley made any sound at the time of the man's contact with her.  See Video at 3:57-4:00.  However, several minutes later Ms. Beasley indicates that she believes her foot was broken.  See, e.g., Video at 9:24-9:26 ("I feel like I re-broke my foot."); Video at 12:42-12:46 ("I think I broke my foot again.").

In her affidavit, Ms. Beasley describes the incident as follows: "one cop shoved a man right in front of me, who fell back onto me, stomping on my foot and causing me to stumble. My foot hurt so badly that I thought I had broken it."  Beasley Decl. ¶ 8.[2]

## II. DISCUSSION

We first consider how to interpret the term "force" in the phrase "subject to force by police officers."  "While a consent decree is a judicial pronouncement, it is principally an agreement between the parties and as such should be construed like a contract."  Crumpton v. Bridgeport Educ. Ass'n, 993 F.2d 1023, 1028 (2d Cir. 1993).  In interpreting words in a contract, and thus in a consent decree, the "intent of the parties governs" and "words and phrases are given their plain meaning."  PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1199 (2d Cir. 1996) (citations omitted).  Where "a term of a consent decree is ambiguous, a court may consider extrinsic

---

[2]  Plaintiffs twice assert that Ms. Beasley was a "leader of the protest."  Pl. Letter at 1, 2. But this fact is irrelevant to the determination of whether she was "subject to force."

evidence to ascertain the parties' intent, including the circumstances surrounding the formation

of the decree."  King v. Allied Vision, Ltd., 65 F.3d 1051, 1059 (2d Cir. 1995).

The word "force" has various meanings.  But the parties' intention regarding the use of

the word "force" is most easily gleaned from the materials submitted in support of the

Settlement.  The brief in support of approval of the settlement agreement summarizes the

complaint as alleging that the police "arrested and charged the protestors without probable cause

and subjected them to excessive force."  Memorandum of Law in Support of Plaintiffs'

Unopposed Motion for Preliminary Approval of Proposed Class Settlement, filed Feb. 28, 2023

(Docket # 166), at 2.  The brief repeats the assertion that the case is in part about police use of

"excessive force."  Id. at 12-13, 16.  The Court thus finds that the parties use of the word "force"

was meant to call to mind an excessive force claim, but without the need for a class member to

show that a use of force was "excessive" in relation to a particular police action.

The elements of an excessive force claim under 42 U.S.C. § 1983 mirror those of a civil

battery or assault claim with the added requirement that the underlying tort be committed under

the color of state law.  See Cabral v. City of New York, 2014 WL 4636433, at *10 (S.D.N.Y.

Sept. 17, 2014) ("[E]xcept for § 1983's requirement that the tort be committed under color of

state law, the elements for a claim of assault and battery against law enforcement officers under

New York law and a claim of excessive force under § 1983 are the same.") (citation and

quotation marks omitted); Dawson v. City of Mount Vernon, 2023 WL 7219882, at *4 (S.D.N.Y.

Nov. 2, 2023) ("[I]t is well-established that the elements of New York assault and battery and

Section 1983 excessive force claims are substantially identical.") (citation, alterations and

quotation marks omitted); accord Rizk v. City of New York, 462 F. Supp. 3d 203, 229 (E.D.N.Y.

2020).  Thus, given the similarities between section 1983 excessive force and civil battery

claims, we find civil battery an appropriate framework for analyzing the word "force" in the Settlement, as plaintiffs have suggested.  See Pl. Letter at 2 (citing Rothman v. City of New York, 2019 WL 3571051, at *16 (S.D.N.Y. Aug. 5, 2019)).

Under New York law, "[o]ne commits a civil battery when (1) there was bodily contact between the plaintiff and the defendant, (2) the contact was offensive, and (3) the defendant intended to make the contact without the plaintiff's consent."  Rothman, 2019 WL 3571051, at *16; see Baker v. City of New York, 551 F. Supp. 3d 258, 269 (S.D.N.Y. 2021) ("To plead a battery claim, Plaintiff must allege 'bodily contact, made with intent, and offensive in nature.'") (quoting Fugazy v. Corbetta, 34 A.D.3d 728, 729 (2d Dep't 2006)).  A plaintiff need not show "intent to harm" to satisfy the intent element, see Rothman, 2019 WL 3571051, at *16; rather, "[t]he intent required for battery is intent to cause a bodily contact that a reasonable person would find offensive," Armstrong ex rel. Armstrong v. Brookdale Univ. Hosp. & Med. Ctr., 425 F.3d 126, 134 (2d Cir. 2005) (quoting Jeffreys v. Griffin, 1 N.Y.3d 34, 42 n.2 (N.Y. 2003)).

The plaintiffs do not seem to contest that the police officer's contact with the unidentified man constituted a battery.  And we have no doubt that the officer's actions with respect to the man satisfy the low threshold for a battery.  The officer obviously intended to make contact with the man and made such contact.  Further, the contact was "offensive" because the law of battery directs that "the slightest unlawful touching of the person of another is sufficient" because "the law cannot draw the line between different degrees of violence and therefore totally prohibits the first and lowest stage."  United Nat. Ins. Co. v. Waterfront New York Realty Corp., 994 F.2d 105, 108 (2d Cir. 1993) (citation omitted); accord Campoverde v. Sony Pictures Ent., 2002 WL 31163804, at *11 (S.D.N.Y. Sept. 30, 2002).

Instead, the point of disagreement is whether it matters that the officer did not make "direct" contact with Ms. Beasley.  In other words, is it sufficient that the officer merely "set in motion the force that causes the contact"?  See Pl. Letter at 2 (quoting Rothman, 2019 WL 3571051, at *16).  While the law is not a model of clarity on this point, the Restatement (Second) of Torts explicitly recognizes that "[a]n actor is subject to liability to another for battery if he acts intending to cause a harmful or offensive contact with the person of" an individual and "a harmful contact with" a different individual "directly or indirectly results."  Restatement (Second) of Torts § 13 (Am. L. Inst. 1965) (emphasis added); see also Kessel v. Adams, 181 A.D.3d 1186, 1187 (4th Dep't 2020) (under the doctrine of "transferred intent," an actor shows intent to harm a party where an injury occurs "as a result of" an intentional act against another party); Borrerro v. Haks Group, Inc., 165 A.D.3d 1216, 1218-219 (2d Dep't 2018) (where a tortfeasor acts intentionally towards a party, third parties who are "injured as a result of" the tortfeasor's intentional act are victims of an intentional tort); Prosser and Keaton, The Law of Torts, § 8 (5th ed. 1984) (under the doctrine of "transferred intent," defendant is liable for "accidental battery" to a person where "the intent was to commit a battery upon a third person").  Thus, to show a battery, it is not necessary that the officer "directly" make contact with Ms. Beasley, given that the contact with Ms. Beasley was the result of the officer's battery of the other protestor.

The City argues that the parties never contemplated that "indirect force" would come within the meaning of the term "force."  See Def. Letter at 3.  What the City alleges the parties "contemplated," however, is of no moment given that the City provides zero evidence that it was both sides' shared view that the term "force" did not include indirect force.  Because we have found that the parties intended that "force" mean the same as it does in case law on excessive

6

force, that the doctrine of excessive force incorporates the law of battery, and that an actor may be liable for the "indirect" consequences of a battery, including injury to third parties who were not the targets of the actor's initial battery, we conclude that Ms. Beasley was "subject to force by" a police officer and thus falls within the class definition.

       SO ORDERED.

Dated: March 5, 2024
       New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge